OPINION
{¶ 1} Appellant Sue Merritt ("mother") appeals the June 17, 2003 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges, and responsibilities relative to her son, Winston Foster, and granted permanent custody of the child to appellee Stark County Department of Jobs and Family Services ("the Agency").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On March 24, 2003, the Agency filed a complaint for permanent custody, alleging Winston Foster (DOB 12/23/02) was a dependent child. The case had been originally filed on December 26, 2002, but was dismissed because the Agency failed to reach disposition within ninety days. The Agency based the complaint upon mother's losing permanent custody of two of Winston's siblings on November 4, 2002, which was due to her failure to mitigate her mental health issues, her failure to confront ongoing domestic violence, her failure to address her anger management problems, and her failure to work on her parenting skills. The Agency further cited information from Akron Children's Hospital indicating Winston was possibly suffering from drug withdrawal. An amended complaint was filed on April 2, 2003. Mother's case plan required her to complete a psychological evaluation and follow all recommendations; attend counseling as scheduled by her therapist; and establish paternity.
 {¶ 3} The matter proceeded to final hearing on June 10, 2003. At that time, Robert Macko, mother's husband and the presumed legal father of Winston, stipulated to the finding Winston was a dependent child, and the granting of permanent custody of Winston to the Agency.[1]
 {¶ 4} Jessica Swartz, an assessment social worker with the Agency, testified the Agency became involved with Winston because of mother losing her parental rights with respect to two older siblings. Swartz testified the Agency had concerns over mother's failure to comply and complete case plans relative to the other children. At an initial pretrial in the instant matter, mother informed Swartz she (mother) would not participate in any of the services set forth in the Agency's case plan.
 {¶ 5} Wanda Pounds, an assessment social worker with the Agency, testified she interviewed mother on the day she gave birth to Winston. Pounds explained the purpose of the interview was to determine whether mother had improved the home situation since the removal of her other children. While discussing the reasons for the removal of the older children, mother told Pounds she lost custody due to "dirty pool and the crooked law." Mother informed Pounds she had obtained food stamps and a medical card in anticipation of bringing Winston home. Mother gave Pounds no indication as to whether she was involved in any psychological services.
 {¶ 6} Dr. Gerald Bello testified he evaluated mother on two occasions with respect to the case involving her other children. Dr. Bello identified a number of personality concerns in mother, including anger management, temper outburst, uncontrollable rages, impulsivity, antisocial attitudes and behaviors, and an inability to accept responsibility and learn from mistakes. Dr. Bello recommended a minimum of one year of individual psychotherapy on a biweekly basis as well as anger management classes. Dr. Bello noted mother had a poor prognosis without significant intervention.
 {¶ 7} Steve Fratantonio, a doctoral psychology intern at Nova Behavioral Health, testified on mother's behalf. Fratantonio conducted mother's intake assessment. At the intake, mother reported symptoms of depression as well as anger over the removal of her two older children. Fratantonio stated mother had been involved in individual counseling as well as an anger management group for four months. He noted mother had missed only one appointment in the last four months. Although mother's participation had been good, Fratantonio stated her progress had only been fair. On cross-examination, Fratantonio testified he diagnosed mother with a borderline personality disorder. The diagnostic criteria are "instability in terms of effective moods, instability in terms of the interpersonal relations meaning that an individual has interpersonal relationships that tend to be intense at times. * * * there's some unstable sense of self." Tr. of June 10, 2003 Proceedings at 53.
 {¶ 8} After considering all the evidence, including the guardian ad litem's written report, the trial court found Winston could not or should not be placed with mother within a reasonable time and it was in the child's best interest to grant permanent custody to the Agency. The trial court terminated mother's parental rights, responsibilities and obligations. The trial court memorialized its ruling via Judgment Entry, and Findings of Fact and Conclusions of Law, both filed June 17, 2003.
 {¶ 9} It is from these entries mother appeals, raising as her sole assignment of error:
 {¶ 10} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 11} This case comes to us on the accelerated calendar. App.R. 11.1, which governs accelerated calendar cases, provides, in pertinent part: "(E) Determination and judgment on appeal. The appeal will be determined as provided by App.R. 11.1. It shall be sufficient compliance with App.R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 12} This appeal shall be considered in accordance with the aforementioned rule.
 I {¶ 13} In her sole assignment of error, mother argues the trial court's findings the child could not or should not be placed with mother within a reasonable time, and the best interest of the child would be served by granting permanent custody to the Agency were against the manifest weight and sufficiency of the evidence.
 {¶ 14} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 15} The relevant statute is R.C. 2151.353, which provides, in pertinent part: "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * * (4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."
 {¶ 16} R.C. 2151.414(E) sets forth the factors which a trial court must find when determining whether the child cannot or should not be placed with his parent. In the instant action, the trial court specifically found Winston could not be placed with mother within a reasonable time or should not be placed with mother because: "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties; (2) Chronic mental illness, chronic emotional illness * * * of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing; * * * (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; * * * (11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child; * * * (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect; (15) The parent has committed abuse * * * against the child or caused or allowed the child to suffer neglect * * *, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety[2]; (16) Any other factor the court considers relevant." R.C. 2151.414(E).
 {¶ 17} The trial court found mother failed to rectify the problems which caused the removal of her two other children, which included mental health and anger management issues, domestic violence, and her lack of parenting skills. Mother not only refused to comply with the case plan relative to Winston, but also refused to accept a copy of the plan from the caseworker.
 {¶ 18} In determining the best interest of a child, R.C. 2151.414(D) states:"* * * the court shall consider all relevant factors, including, but not limited to, the following: (1)The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; * * * (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
 {¶ 19} In light of the foregoing and based upon the entire record in this matter, we find the trial court's findings the child could not and should not be placed with mother within a reasonable time, and it was in the best interest of the child to grant permanent custody to the Agency were not against the manifest weight and sufficiency of the evidence.
 {¶ 20} Mother's sole assignment of error is overruled.
 {¶ 21} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By: Hoffman, P.J., Wise, J., and Edwards, J. concur.
[1] Macko is not a party to this appeal. There are three alleged fathers of this child, to wit: Robert Macko, Alvin Kinnerson, and "John Doe" (unknown father). Although served with notice, neither Kinnerson nor "John Doe" appeared at the hearing on January 10, 2003.
[2] The Agency concedes Winston was not alleged to be abused or neglected; therefore, the trial court's finding pursuant to R.C.2151.414(E)(15) was against the manifest weight of the evidence.